# IN THE UNITED STATES DISTRICT COURT

# DISTRICT OF UTAH

| | |
|---|---|
| **TERRY M.,** | **REPORT AND RECOMMENDATION** |
| Plaintiff, | |
| | **Case No. 2:19-cv-00902-DB-JCB** |
| v. | |
| **ANDREW M. SAUL,** | |
| **Commissioner of Social Security,** | **District Judge Dee Benson** |
| Defendant. | **Magistrate Judge Jared C. Bennett** |

District Judge Dee Benson referred this case to Magistrate Judge Paul M. Warner pursuant to 28 U.S.C. § 636(b)(1)(B).[1] Due to Judge Warner's retirement, this case is now referred to Magistrate Judge Jared C. Bennett.[2] Before the court is Terry M.'s ("Plaintiff") appeal of Defendant Andrew M. Saul's ("Commissioner") final decision determining that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. 42 U.S.C. §§ 401-434. After careful consideration of the written briefs and the complete record, the court has determined that oral argument is not necessary in this case. Based upon the analysis set forth below, the court recommends affirming the Commissioner's decision.

---

[1] ECF No. 18.

[2] ECF No. 20.

## PROCEDURAL BACKGROUND

Plaintiff alleges disability due to various physical and mental impairments. On November 16, 2011, Plaintiff filed a protective application for DIB, alleging disability beginning on September 15, 2007.[3] Plaintiff's application was denied initially and upon reconsideration.[4] Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which occurred on October 10, 2013.[5] On February 12, 2014, the ALJ issued a written decision denying Plaintiff's claim for DIB.[6]

On September 15, 2015, Plaintiff filed a complaint in this court seeking review of the Commissioner's final decision.[7] On March 22, 2016, the court granted the Commissioner's unopposed motion, which remanded the case for further proceedings.[8] On April 14, 2016, the Appeals Council sent the case to a different ALJ.[9]

On October 7 and 10, 2016, Plaintiff appeared for administrative hearings before the ALJ.[10] On November 18, 2016, the ALJ issued a written decision denying Plaintiff's claim for

---

[3] ECF No. 10, Administrative Record ("AR ___") 158-64.

[4] AR 77-78, 89.

[5] AR 47-76.

[6] AR 16-37.

[7] AR 920-26.

[8] AR 927-28.

[9] AR 929-34.

[10] AR 883-919.

DIB.[11] Thereafter, Plaintiff again filed a complaint in this court seeking review of the Commissioner's final decision. On August 27, 2018, the court reversed the Commissioner's decision and remanded the case for further proceedings.[12] On October 3, 2018, the Appeals Council sent the case back to the ALJ.[13]

On May 16, 2019, Plaintiff appeared for an administrative hearing before the ALJ.[14] On August 9, 2019, the ALJ issued yet another decision denying Plaintiff's claim for DIB.[15] Plaintiff timely filed the complaint in this case seeking review of the Commissioner's most recent final decision.[16]

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). The Commissioner's findings, "if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted).

---

[11] AR 858-80.

[12] AR 1359-72.

[13] AR 1373-78.

[14] AR 1330-58.

[15] AR 1296-1325.

[16] ECF No. 3.

"In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The [f]ailure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted) (first alteration in original).

The aforementioned standards of review apply to the ALJ's five-step evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step process). If a determination can be made at any one of the steps that a claimant is or is not disabled, the subsequent steps need not be analyzed. 20 C.F.R. § 404.1520(a)(4).

> Step one determines whether the claimant is presently engaged in substantial gainful activity. If [the claimant] is, disability benefits are denied. If [the claimant] is not, the decision maker must proceed to step two: determining whether the claimant has a medically severe impairment or combination of impairments. . . . If the claimant is unable to show that [her] impairments would have more than a minimal effect on [her] ability to do basic work activities, [she] is not eligible for disability benefits. If, on the other hand, the claimant presents medical evidence and makes the *de minimis* showing of medical severity, the decision maker proceeds to step three.
>
> . . . .
>
> Step three determines whether the impairment is equivalent to one of a number of listed impairments that . . . are so severe as to preclude substantial gainful activity . . . . If the impairment is listed and thus conclusively presumed to be disabling, the claimant is entitled to benefits. If not, the evaluation proceeds to the fourth step . . . .

*Williams*, 844 F.2d at 750-51 (quotations and citations omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(i)-(iii).

At the fourth step, the claimant must show, given her residual functional capacity ("RFC"), that the impairment prevents performance of her "past relevant work." 20 C.F.R. § 404.1520(a)(4)(iv). "If the claimant is able to perform [her] previous work, [she] is not disabled." *Williams*, 844 F.2d at 751. If, however, the claimant is not able to perform her previous work, she "has met [her] burden of proof, establishing a prima facie case of disability." *Id.*

At this point, "[t]he evaluation process . . . proceeds to the fifth and final step." *Id.* At this step, the burden of proof shifts to the Commissioner, and the decision maker must determine "whether the claimant has the [RFC] to perform other work in the national economy in view of [her] age, education, and work experience." *Id.* (quotations and citation omitted); *see also* 20 C.F.R. § 404.1520(a)(4)(v). If it is determined that the claimant "can make an adjustment to other work," she is not disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, on the other hand, it is determined that the claimant "cannot make an adjustment to other work," she is disabled and entitled to benefits. *Id.*

## ANALYSIS

In support of her claim that the Commissioner's decision should be reversed, Plaintiff argues that the ALJ erred: (1) by failing to account for Plaintiff's mental impairments in the RFC determination and in the hypotheticals posed to the vocational expert ("VE"); and (2) in his evaluation of the medical opinion evidence. The court addresses each argument in turn below.

5

Based upon the following analysis, the court concludes Plaintiff's arguments are without merit and, therefore, recommends affirming the Commissioner's decision.

I.   **The ALJ Did Not Err in the RFC Determination or in the Hypotheticals Posed to the VE.**

Plaintiff first argues that the ALJ erred by failing to account for Plaintiff's mental impairments in the RFC determination and in the hypotheticals posed to the VE.  For the reasons set forth below, that argument fails.

When considering a claimant's mental impairments, the ALJ is required to follow a specific technique for evaluating the severity of those impairments and their effect on the claimant's ability to work.  20 C.F.R. § 404.1520a(a).  Under that technique, the ALJ must first determine whether the claimant has a medically determinable mental impairment.  *Id.* § 404.1520a(b)(1).  If the claimant does have such an impairment, the ALJ must then consider the degree of functional limitation resulting from the impairment in four broad functional categories: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself.  *Id.* § 404.1520a(c)(3).  The relevant regulations provide a scale for the ALJ to use in rating the claimant in each of those areas.  *Id.* § 404.1520a(c)(4).  Those ratings are used to support the ALJ's conclusions and steps two and three of the sequential evaluation process.  *Id.* § 404.1520a(d).

When an ALJ moves on to formulating a claimant's RFC, the ALJ must account for all functional limitations resulting from the claimant's impairments, both severe and non-severe.  *Id.* § 404.1545(a)(2) (providing that the ALJ must "consider all of [a claimant's] medically determinable impairments . . . , including [the claimant's] medically determinable impairments

6

that are not 'severe,'" when assessing the claimant's RFC); SSR 96-8p, 1996 WL 374184, at *5 (July 2, 1996) ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). In determining a claimant's RFC, the ALJ cannot rely upon a finding of non-severity at step two as a substitute for an adequate RFC analysis. Wells v. Colvin, 727 F.3d 1061, 1068-69 (10th Cir. 2013). In Wells, the court stated that when an ALJ finds non-severe mental impairments at step two, that finding cannot support omitting mental impairments from the RFC determination. Id. Instead, an ALJ must engage in an adequate RFC analysis by considering the functional limitations resulting from those impairments. Id.

In this case, at step two, the ALJ employed the above-referenced technique and concluded that Plaintiff had mild limitations in each of the four categories.[17] In support of that conclusion, the ALJ stated: "Overall, the record shows that [Plaintiff] has maintained grossly normal mental status examinations throughout the relevant period. While there are episodes of increased symptomology, these appear to be based on increased family stressors rather than worsening mental disorder. Accordingly, I find that [Plaintiff]'s alleged mental impairments are non[-]severe."[18] After reaching that conclusion, the ALJ recognized that the limitations he found

> are not a [RFC] assessment but are used to rate the severity of mental impairments at step 2 and 3 of the sequential evaluation process. The mental [RFC] capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed

---

[17] AR 1305-06.

[18] AR 1305.

>assessment by itemizing various functions contained in the broad categories [considered at steps two and three].[19]

In determining Plaintiff's RFC, the ALJ discussed the medical opinion evidence related to Plaintiff's mental impairments.[20] He gave great weight to certain medical opinions that he concluded were "consistent with the generally benign objective findings on mental status examinations in the treatment record and at the consultative examination" and were "consistent with [Plaintiff]'s ability [to perform] a wide variety of mental activities of daily living and ability to socialize with others."[21] In his final RFC determination, the ALJ did not include any functional limitations related to Plaintiff's mental impairments. The ALJ likewise did not include any such limitations in the hypotheticals posed to the VE.

Relying upon *Wells*, Plaintiff contends that the ALJ erred in both of those regards. In response, the Commissioner argues that Plaintiff's reliance upon *Wells* is misplaced. The Commissioner also argues that the reasoning of *Suttles v. Colvin*, 543 F. App'x 824 (2013), is dispositive of Plaintiff's argument. The court agrees with the Commissioner on both points.

Plaintiff's reliance upon *Wells* is indeed misplaced. As noted above, *Wells* stands for the proposition that an ALJ cannot rely upon step-two findings to substitute for an adequate RFC analysis. *Wells*, 727 F.3d at 1068-69. It is important to note, however, that although the *Wells* court did reverse the Commissioner's decision, it did not do so based upon that proposition. Instead, the court reversed the decision because the ALJ's step-four findings were not supported

---

[19] AR 1306.

[20] AR 1311.

[21] *Id*.

8

by substantial evidence. *Id.* at 1069-71. With respect to the aforementioned proposition, the court merely stated that, based upon certain language in the decision, the ALJ "*may have* relied on his step-two findings to conclude that [the plaintiff] had no limitation based on her mental impairments" and that, "[i]f so, this was inadequate under the regulations and the Commissioner's procedures." *Id.* at 1069 (emphasis added). The court went on to note that

> [n]otwithstanding [the ALJ's] previous statement about step-two findings, the ALJ did . . . separately discuss [the plaintiff's] mental impairments to some degree, when assessing her credibility as part of his RFC determination. This discussion, although far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of [the plaintiff's] ability to complete various job functions as part of determining her RFC.

*Id.* That final passage, along with the holding of *Suttles*, leads the court to the conclusion that Plaintiff's argument must fail.

In *Suttles*, the plaintiff argued that the ALJ erred by finding that the plaintiff had mild limitations in one of the four functional categories but failing to include any limitations related to that finding in the plaintiff's RFC. *Suttles*, 543 F. App'x at 825. The court rejected the plaintiff's argument and held "that the ALJ conducted a mental RFC assessment separate from the non-severity determination made at step two." *Id.* at 826. In reaching that conclusion, the court acknowledged the ALJ's step-two findings but noted that the ALJ recognized, as the ALJ did in this case, "that a distinct mental RFC assessment was still required at step four." *Id.* The court then quoted the following portion of the ALJ's decision, which is substantively identical to the portion of the ALJ's decision in this case quoted above:

> "The limitations identified . . . [at step two] are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation

9

> process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing functions contained in the broad categories . . . [previously considered at steps two and three]."

*Id.* (alterations in original). The court also noted that "[a]t step four, the ALJ discussed evidence relating to depression and then pointedly omitted any limitation associated with that mental impairment [from] the RFC . . . , though the ALJ admittedly could have been more explicit in tying the former discussion to the latter conclusion." *Id.* Finally, the court noted that "[s]ignificantly, the ALJ did not make any ancillary statement, like that made by the ALJ in *Wells*, affirmatively suggesting an improper conflation of the step-two and step-four assessments." *Id.*

Similar to the ALJ in *Suttles*, the ALJ in this case: (1) recognized that a separate mental RFC assessment was required at step four; (2) discussed the medical opinion evidence related to Plaintiff's mental impairments; (3) specifically omitted any limitations concerning Plaintiff's mental limitations from the RFC and the hypotheticals posed to the VE; and (4) did not make any statements indicating that he was using his step-two findings to substitute for an adequate RFC analysis. As such, the court concludes that the ALJ did not err in the manner Plaintiff asserts. Although the ALJ here, like the ALJs in *Wells* and *Suttles*, could have been more specific in linking his discussion of the evidence to his RFC determination, the court concludes that his decision demonstrates that he conducted a mental RFC assessment separate from his step-two findings.

## II. The ALJ Did Not Err in His Treatment of the Medical Opinions.

Plaintiff argues that the ALJ erred in his treatment of the medical opinions of four of Plaintiff's treating sources: Jon Hughes, M.D.; Jeremy Strange, D.P.M.; Alma Parker, M.D.; and Eric Reynolds, N.P. Plaintiff also argues that the ALJ ignored the global assessment of functioning ratings of A.L. Carlisle, Ph.D. Those arguments are without merit.

Plaintiff's insured status for purposes of DIB eligibility, or date last insured ("DLI"), expired on December 31, 2011. Thus, the relevant time period for Plaintiff's DIB benefits ended on that date. For each of the medical opinions at issue, the ALJ noted that their opinions were rendered after Plaintiff's DLI.[22] Thus, the ALJ concluded that those opinions did not relate to the relevant time period and, therefore, were entitled to little weight.[23] The court concludes that the ALJ did not err in reaching that conclusion.[24] *See, e.g.*, *Vititoe v. Colvin*, 549 F. App'x 723, 730 (10th Cir. 2013) (concluding that the Appeals Council did not err in determining that a medical

---

[22] AR 1309-10.

[23] *Id*.

[24] In a related argument, Plaintiff contends that the ALJ was obligated to re-contact the treating sources to determine if their opinions related back to the relevant time period. Importantly, as noted by the Commissioner, the regulation upon which Plaintiff relies to support that argument, 20 C.F.R. § 404.1512(e), was rescinded in 2012. *See, e.g.*, *Trujillo v. Colvin*, No. 1:14-CV-35-DN-DBP, 2015 WL 5009360, at *5 n.3 (D. Utah Aug. 21, 2015). An updated regulation was in effect during the time period relevant to the instant case. 20 C.F.R. § 404.1520b. That regulation provides that "the ALJ 'may' choose any one of four possible actions, including re-contacting the treating source, requesting additional medical records, asking the claimant to undergo a consultative examination, or seeking information from the claimant or another source." *Trujillo*, 2015 WL 5009360, at *5 (citing 20 C.F.R. § 404.1520b). Therefore, Plaintiff argument that the ALJ was required to re-contact the treating sources fails.

opinion was not relevant to the plaintiff's disability determination because the source did not begin treating the plaintiff until nearly two years after his DLI).

## **CONCLUSION AND RECOMMENDATION**

The court concludes that all of Plaintiff's arguments fail. Accordingly, IT IS HEREBY RECOMMENDED that the Commissioner's decision in this case be AFFIRMED.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The parties must file any objection to this Report and Recommendation within 14 days after being served with a copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute waiver of objections upon subsequent review.

DATED September 15, 2020.

BY THE COURT:

_____
JARED C. BENNETT
United States Magistrate Judge